IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


ADAM RYAN SHIELDS,                    §
                                      §
        Petitioner,                   §
                                      §
v.                                    §            2:07-CV-0118
                                      §
RICK THALER, Director,                §
Texas Department of Criminal Justice, §
Correctional Institutions Division,   §
                                      §
        Respondent.                   §


## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner ADAM RYAN SHIELDS has filed with this Court a Petition for a Writ of

Habeas Corpus by a Person in State Custody challenging two (2) convictions out of the 100th

Judicial District Court of Childress County, Texas.  For the reasons hereinafter expressed, the

United States Magistrate Judge is of the opinion petitioner's application for federal habeas

corpus relief should be DENIED.


I.
PROCEDURAL HISTORY

On June 10, 2005, in the 100th Judicial District Court of Childress County, Texas,

petitioner was indicted for the offense of possession of a controlled substance with intent to

deliver, alleged to have occurred on November 29, 2004.[1] *State v. Shields*, Cause No. 4813.[2] On

that same date, in the 100th Judicial District Court of Childress County, Texas, petitioner was

charged in a 2-count indictment for the offense of injury to a child, alleged to have occurred on

May 15, 2005. *State v. Shields*, Cause No. 4836. Specifically, it was alleged, in Count 1, that

petitioner did "intentionally or knowingly cause serious bodily injury to Xavier Shields, a child

14 years of age or younger, by shaking Xavier Shield"; and, in Count 2, that petitioner did

"intentionally or knowingly cause serious mental deficiency, impairment or injury to Xavier

Shields, a child 14 years of age or younger, by shaking Xavier Shields."

Petitioner's trial counsel moved for a competency examination and on September 9,

2005, petitioner was given a psychological examination to determine both his competency to

stand trial and his sanity at the time of the offenses. The examiner opined petitioner had the

capacity to rationally understand the charges against him and the potential consequences, and the

ability to participate in the adversarial proceedings. The examiner further found petitioner was

presently competent to stand trial. The examiner opined petitioner was significantly depressed

and should be medically treated for a depressive disorder, but that his depressive order did not

impair his perception and understanding of reality. The examiner also opined petitioner did not

have a diagnosable mental illness which impaired his perception and understanding of reality,

and that petitioner was falsely presenting symptoms of a severe mental illness (noted also as

malingering - symptoms of mental illness). Noting an individual is not considered insane at the

---

[1]The indictment alleged petitioner "did then and there knowingly possess, with intent to deliver, a controlled substance, namely, Methamphetamine, in an amount of four grams or more but less than 200 grams, by aggregate weight including any adulterants and dilutants."

[2]Inquiry to the Childress County District Clerk's office revealed one Charlton Eugene Davis was also indicted on June 10, 2005, in Cause No. 4811,for a November 29, 2004 offense of possession with intent to deliver.

time of an offense because of intoxication or because of the effects of substances which the individual voluntarily introduces into his body, the examiner opined petitioner was not insane at the time of the commission of the charges against him, but did claim an inability to remember the events leading to the charges.

On September 13, 2005, the state trial court conducted a competency hearing and a jury determined petitioner was competent to stand trial in Cause No. 4836.

On October 20, 2005, the state trial court conducted a pretrial hearing addressing petitioner's request to discharge his appointed counsel, appoint new board certified defense counsel, and transfer venue. During this hearing, the trial court discussed with defendant, with counsel for both sides present, the difference between straight time and good time, the effect of an aggravated finding as opposed to a non aggravated finding, eligibility for parole, the effect of petitioner's guilty plea, and the effect of concurrent versus consecutive sentences. The trial court denied petitioner's motion to withdraw counsel and took the motion to transfer venue under consideration until a jury venire could be polled. On October 20, 2005, petitioner signed various waivers and a Judicial Confession stating he had read the indictment in each case and that he "committed each and every allegation it contains" and is "guilty of the offense as alleged." Petitioner also filed a Stipulation of Evidence in Cause No. 4836 which struck, by agreement of all the parties, the term intentionally in Count One, resulting in petitioner's admitting he knowingly caused serious bodily injury to a child under the age of fourteen. In the same Stipulation, Count Two of the indictment was struck by agreement of all the parties. The trial court then held a guilty plea hearing wherein petitioner, pursuant to a plea agreement, entered a plea of guilty in both cases. The specific terms of the written plea agreement,

applicable to both cause number 4813 and 4836, were:

1.  Petitioner receive 50-year, concurrent sentences;

2.  Petitioner receive no fine;

3.  Petitioner receive jail credit of 178 days toward his sentences; and

4.  That the outstanding criminal charges in Cause Nos. 4637, 4638, 4752 and 4823 be dismissed.

The trial court accepted petitioner's pleas, found petitioner guilty in both cases, and entered a 50-year sentence of imprisonment in each, such sentences to be served concurrently. Petitioner did not appeal his convictions and sentences to the state appellate court.

On November 13, 2006, petitioner filed two (2) applications for state habeas corpus relief challenging his convictions in Cause Nos. 4813 and 4836. On February 7, 2007, the Court of Criminal Appeals, in an order of abeyance, identified petitioner's claims as alleging (1) his guilty pleas were involuntary because he was not competent to enter his pleas, (2) he did not admit to intentionally injuring a child, only to intentionally using illicit drugs, (3) he was not properly admonished as to the consequences of his guilty pleas, and (4) counsel's representation was tainted by a conflict of interest because counsel dually represented a co-defendant who testified against petitioner in the possession case. In its order, the Court of Criminal Appeals directed the state trial court to provide trial counsel an opportunity to respond to petitioner's claim of ineffective assistance of counsel, hold a hearing if necessary, supplement the record and make findings of fact on the following issues:

1.  Whether the performance of petitioner's trial counsel was deficient and, if so, whether counsel's deficient performance prejudiced petitioner;

2.  Whether counsel believed petitioner was competent when he entered his pleas;

3.      Whether counsel represented any individual who testified against petitioner at the same time as he represented petitioner; and

4.      Whether petitioner was properly admonished as to the consequences of his guilty pleas.

On April 25, 2007, the trial court entered findings of fact and conclusions of law finding:

1.      Trial counsel was not deficient in his performance on behalf of petitioner;

2.      Trial counsel believed and a jury found petitioner was competent at the time petitioner entered his guilty pleas;

3.      Trial counsel did not represent any individual who testified against petitioner at the same time as trial counsel was representing petitioner; and

4.      Petitioner was properly admonished as to the consequences of his guilty pleas, petitioner's guilty pleas were voluntary, and petitioner knowingly, intelligently and voluntarily executed written waivers and acknowledgments as to same.

On June 6, 2007, the Texas Court of Criminal Appeals denied relief without written order on the findings of the trial court. *Ex parte Shields*, App. No. WR-66,631-01, -02. On June 14, 2007, petitioner, acting pro se, filed two (2) federal petitions for habeas relief challenging his convictions and sentences which were later consolidated into this cause.[3] *See* Cause No. 2:07-CV-0119. On November 9, 2007, the State filed its answer opposing petitioner's applications. On March 30, 2010, petitioner filed an Amended Complaint.

II.
FACTUAL HISTORY

Petitioner has provided his recitation of the applicable facts of the possession case in his supporting memorandum:

---

[3] *See Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (a federal petition is considered filed on the date it is placed in the prison mail system).

In November 2004 [petitioner] along with Eugene Davis, were both arrested and charged with Possession of a Controlled Substance with Intent to Deliver (Cause No. 4813 for [petitioner]). Both charges were a result of the same controlled substance, found in the same house although not on any one person, and seized during the same police raid [on an alleged drug house].

Eugene Davis received a habitual offender enhancement, which would have resulted in a min. 25 year sentence, and a max. 99 year sentence upon conviction. However, because Mr. Davis stated that the controlled substance found belonged to [petitioner] and agreed to testify in court to this, the habitual enhancement was dismissed a well as the Intent to Deliver claim. This allowed Davis to be convicted of the lesser included offense of simple possession.

*Petitioner's Memorandum*, at 33.

The [petitioner] soon appeared before Judge David McCoy of the 100th District Court of Childress, Texas, who appointed Earl Griffin to represent [petitioner] on all charges against him. Mr. Griffin was also appointed by the same court to represent Eugene Davis.

*Petitioner's Memorandum*, at 9-10.[4]


# III.
## PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States in Cause No. 4813 (possession of a controlled substance with intent to deliver) for the following reasons:

1.      Petitioner's guilty plea was neither knowing or voluntary because:

    a.      petitioner was suffering from a severe mental impairment;

    b.      the guilty plea was the result of threats and coercive tactics by the prosecutor;

    c.      the guilty plea was the result of threats and coercive tactics by the trial judge; and

---

[4]Petitioner does not set forth any facts leading up to the indictment for injury to a child.

d.      the State failed to abide by the terms of the plea agreement, *i.e.*, that petitioner be convicted of only one count of injury to a child instead of two counts in Cause No. 4836.

2.      The trial court abused its discretion because the trial judge:

         a.      involved himself in the plea discussions;

         b.      refused to grant a change of venue; and

         c.      recommended "on the record" that petitioner accept the plea offer.

3.      Petitioner was denied the effective assistance of trial counsel because trial counsel:

         a.      gave erroneous and misleading information that induced petitioner to accept the plea; and

         b.      failed to provide "conflict free" counsel, because trial counsel also represented co-defendant, "Eugene Davis."

With respect to Cause No. 4836 (injury to a child), petitioner asserts the same grounds set forth above with regard to Cause No. 4813, but also asserts the following additional grounds:

4.      Petitioner's guilty plea in cause number 4836 was neither knowing or voluntary because:

         a.      the trial court failed to obtain the plea of guilty in "open court"; and

         b.      petitioner's plea was improperly based on trial counsel's erroneous admission concerning "intoxication manslaughter," an irrelevant and unrelated offense.

5.      The trial court abused its discretion because the trial court accepted petitioner's guilty plea in cause number 4836, even though the judge "was not convinced" that petitioner was actually guilty as charged; and

6.      There was insufficient evidence to support petitioner's guilty plea in cause number 4836.

In his amended application, petitioner asserts:

7. Petitioner was denied effective assistance of trial counsel because counsel failed to :

   a.   obtain an investigator to discover mitigating facts;

   b.   obtain an independent psychologist to litigate insanity; and

   c.   did not adequately prepare for trial.

8. Petitioner is actually innocent of the charged offenses as shown by newly discovered evidence.

## IV.
## EXHAUSTION OF STATE COURT REMEDIES

In his answer to this petition, respondent concedes petitioner sufficiently exhausted his available state court remedies as required by 28 U.S.C. § 2254(b), (c). The undersigned Magistrate Judge has reviewed petitioner's state court records and it appears petitioner has presented, to the highest court of the State of Texas, the substance of the claims he now presents to this federal court. Therefore, it is the opinion of the Magistrate Judge that petitioner has exhausted his available state court remedies, and that this cause not be dismissed for any failure to exhaust but, instead, be decided on the merits.

## V.
## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody under a state court judgment shall <u>not</u> be granted with respect to any claim adjudicated on the merits in state court proceedings unless he shows the prior adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). A state court decision will be an unreasonable application of clearly established precedent if it correctly identifies the applicable rule but applies it objectively unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08; *see also Neal v. Puckett*, 286 F.3d 230, 236, 244-46 (5th Cir. 2002) (en banc per curiam), *cert. denied*, 537 U.S. 1104 (2003).

Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting this presumption of correctness by clear and convincing evidence. *Hill*, 210 F.3d at 485. When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits entitled to this presumption. *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997).

Petitioner filed state habeas applications challenging the constitutionality of his convictions and sentences alleging the same grounds alleged in this petition. The Texas Court of Criminal Appeals denied petitioner's state habeas applications on June 6, 2007 without written order on the findings of the trial court. *Ex parte Shields*, App. No. WR-66,631-01, -02. The rulings of the Texas Court of Criminal Appeals constitute adjudications of petitioner's claims on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999). Consequently, this Court's

review is limited to a determination of whether petitioner has shown the state court's decisions

that petitioner was not denied his constitutional rights during the underlying state court

proceedings were based on an unreasonable determination of the facts in light of the evidence

before the state court, or that the state court's decisions were contrary to, or involved an

unreasonable application of, clearly established federal law, as determined by the United States

Supreme Court.

## VI.
## MERITS[5]

Federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally

unfair that the petitioner's constitutional rights were violated.  In determining whether an error

was so extreme or a trial so fundamentally unfair, this Court must review the putative error at

issue, looking at the totality of the circumstances surrounding the error for a violation of the

---

[5]Petitioner was sentenced in Cause Nos. 4813 and 4836 on October 20, 2005.  As part of the written plea waivers, petitioner not only explicitly waived his right to seek a motion for new trial and to appeal these convictions, he specifically waived "the time provided by law in which to file a Motion for New Trial, Motion for Arrest of Judgment, and Notice of Appeal."  Respondent, in his answer, contends petitioner's convictions became final on October 20, 2005, the date sentences were entered, due to the language of these waivers, respondent argues the statute of limitations for petitioner's claims expired on October 20, 2006, prior to the filing of his state writ petitions on November 13, 2006.  Respondent concludes petitioner's federal writ petitions, filed with this Court on June 14, 2007, were filed almost eight (8) months too late and, must be dismissed as time-barred.

The question is when does the conviction become final when a petitioner waives his right to appeal.  This district has held, "the fact that state law may restrict a plea-bargaining defendant's right to direct appeal . . . [is] irrelevant to the computation of the federal limitations period under § 2244(d)(1)(A)."  *Hughes v. Dretke*, No. 4:04-CV-802, 2004 WL 2921841, at *2 (N.D.Tex. Dec. 14, 2004).  Texas law allows a defendant thirty (30) days after the day sentence is imposed in open court to file a Notice of Appeal initiating direct review of his conviction and sentence.  *See* Tex. R. App. P. 26.2(a)(1).  Petitioner had until November 21, 2005, in which to file his Notice of Appeal, even if that appeal was subject to dismissal.  Here, petitioner failed to file a notice of appeal, therefore, the time for seeking direct review expired November 21, 2005, and petitioner's conviction became final as of that date.  Any federal habeas application challenging his state conviction and sentence was due on or before November 21, 2006.  The filing of petitioner's state habeas application tolled this time period from November 13, 2006 to June 6, 2007.  Petitioner's federal habeas application was signed and purportedly delivered to prison authorities for mailing on June 14, 2007.  Consequently, it appears petitioner's federal application was timely filed on the last day possible.

Respondent, although arguing petitioner's application should be denied as time barred, has also answered petitioner's allegations on the merits.  Consequently, the undersigned does not recommend this application be dismissed as time barred but, instead, be determined on the merits.

petitioner's constitutional rights.  Based upon a review of the state court records and the pleadings of record with this Court, it is the opinion of the Magistrate Judge that petitioner has failed to show he is being unlawfully detained in violation of the Constitution and laws of the United States.

## A. <u>Involuntary Plea</u>

A federal court must uphold a guilty plea challenged in a habeas corpus proceeding if the plea was voluntary, and knowing and intelligent.  *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995).  Consequently, a challenge is limited to issues of (1) voluntariness, (2) the defendant's understanding of the charges against him, and (3) the defendant's understanding of the consequences of the plea.  *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).  With respect to sentencing, this means "the defendant must know the maximum prison term and fine for the offense charged."  *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990).

On October 20, 2005, petitioner pled guilty to the first degree felony offenses of injury to a child (Cause No. 4836), and possession of a controlled substance with intent to deliver (Cause No. 4813).  Petitioner does not argue he was not adequately informed of the nature of the charges against him or the possible range of punishment prior to entering this guilty plea.  The record conclusively establishes petitioner was, in fact, properly admonished both orally and in writing as to the possible punishment (a range of imprisonment for life, or not more than ninety-nine years, and not less than five years, and a fine of up to $10,000.00).  *See* Tex. Penal Code § 22.04 (West 2005)(defining the injury to a child offense as a first degree felony); Tex. Penal Code § 12.32 (West 2005) (defining the punishment range for a first-degree offense as not more than life or ninety-nine years and not less than five years imprisonment, and a fine of up to $10,000.00);

Tex. Health & Safety Code § 481.112 (West 2004) (defining the drug possession offense for amounts between 4 and 200 grams of methamphetamine).  After being fully and carefully admonished, petitioner still chose to plead guilty to the first degree felony offenses in cause numbers 4813 and 4836.  The court documents, including the judgment, are entitled to a presumption of regularity under 28 U.S.C. § 2254(e), and this Court should accord great evidentiary weight to said instruments.  *Carter v. Collins*, 918 F.2d 1198, 1202 n. 4 (5th Cir. 1990); *Hobbs v. Blackburn*, 752 F.2d 1079, 1081-82 (5th Cir. 1985).  On federal habeas corpus review, petitioner has the burden of rebutting, with clear and convincing evidence, this presumption of regularity.  *See* 28 U.S.C. § 2254(e)(1); *see also Bonvillain v. Blackburn*, 780 F.2d 1248, 1251 (5th Cir. 1986), *cert. denied*, 476 U.S. 1143, 106 S.Ct. 2253, 90 L.Ed.2d 699 (1986).

## *Mental Impairment*

In his first ground, petitioner argues his plea was involuntary because he was suffering from a severe mental impairment when he entered the plea.  In adjudicating this claim on the merits, the Texas Court of Criminal Appeals made the following findings of fact:  (1) the trial court conducted a jury trial as to petitioner's competency to stand trial and, after obtaining expert opinion as to such competency and sanity, a jury found petitioner was competent; (2) at the October 20, 2005 plea hearing, petitioner acknowledged he understood the nature of the charges against him, and averred he was competent and sane; (3) before accepting petitioner's guilty pleas, the trial court found petitioner was both competent and sane; and (4) petitioner was admonished and advised as to the consequences of his pleas, and he acknowledged that he

understood those admonishments.[6]  The Court of Criminal Appeals also determined petitioner

was properly admonished as to the consequences of his guilty pleas, and those pleas were

voluntary, knowing and intelligent.

Petitioner has not met his burden of showing the state habeas courts' findings of fact

were based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.  Nor has petitioner shown the state habeas courts' conclusion of law

as to the voluntariness of his plea was contrary to, or involved an unreasonable application of,

clearly established federal law, as determined by the Supreme Court of the United States.

Consequently, petitioner's claim of incompetency to plead guilty fails to meet the AEDPA

burden and should be denied.  In addition, the record evidence supports the state trial court's

finding that petitioner was legally competent when he pleaded guilty in Cause Nos. 4813 and

4836.

The conviction of a mentally incompetent defendant violates the Due Process Clause.

*Deville v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).  Therefore, when a court has reason to

believe a defendant may be incompetent, it must conduct a competency hearing, utilizing the

same competency standard to enter a guilty plea as to stand trial.  *Id.*  The trial court must

determine whether "the defendant has sufficient present ability to consult with his counsel and

whether he has a rational and factual understanding of the proceedings against him."  *Id.*  (citing

*Dusky v. United States*, 362 U.S. 402 (1960)).  "[A] factual finding of competency by the state

court is presumed to be correct."  *Id.* at 665

Petitioner was examined by a psychological expert who determined petitioner suffered

---

[6]The Texas Court of Criminal Appeals adopted the findings of fact and conclusions of law of the state habeas court with respect to both Cause Nos. 4813 and 4836.

from a "Depressive Disorder" that did <u>not</u> impair his "perception and understanding of reality." Supp. R. 11-23. The expert recommended treatment for the depressive disorder. The record is clear and conclusively shows the examining expert did not find petitioner was "suffering from schizophrenia and in need of medication" Further, the expert opined petitioner was "falsely presenting symptoms of a severe mental illness" and concluded petitioner was both legally competent to stand trial and was sane at the time he committed the offenses. The trial court then conducted a competency hearing and a jury determined petitioner was legally competent to stand trial. Supp. R. 28. Thereafter, the trial court made an independent determination that petitioner was competent at the time he entered his guilty pleas. Three (3) different times petitioner was found competent – first by the expert, second by the jury, and third by the judge. Petitioner has not provided any new evidence rebutting these findings of competency or showing he was actually incompetent at the time of his guilty pleas.[7] Instead, petitioner presents only conclusory allegations that he was incompetent when he entered his guilty pleas which, without more, are not entitled to any evidentiary weight.[8] *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Petitioner has not overcome his heavy burden of proof to show he was mentally incompetent at the time of his guilty pleas and further, has failed to overcome the presumption that the jury's competency determination was factually incorrect. Petitioner is not entitled to relief on this

---

[7]Petitioner cites his one episode of coprophagia (literally ingesting or appearing to ingest feces) at a pre-trial hearing in August 2005 as evidence that he was mentally incompetent. This act, however, was considered by the examining expert, and petitioner has provided no new evidence that the expert's conclusions regarding petitioner's mental state at the time when he committed the acts which formed the bases of the charges, and petitioner's competency to stand trial were in error.

[8]"Conclusory allegations" are unsupported factual averments and cannot, in and of themselves, result in habeas corpus relief. *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Id.* Mere conclusory allegations are insufficient to raise constitutional claims on federal habeas corpus review. *See Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996); *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996); *Johnson v. Scott*, 68 F.3d 106, 112 (5th Cir. 1995); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990). Therefore, petitioner's unsupported claims cannot, by themselves, result in habeas corpus relief.

ground and his claim should be denied.

*1.b.  Prosecutorial Coercion*

In his first ground, petitioner also argues his plea was involuntary because it was the product of coercion on the part of the prosecutor.  Specifically, petitioner alleges the prosecutor threatened to seek and obtain a life sentence against petitioner for the charged offenses if petitioner did not agree to the proposed plea terms.  Petitioner also argues the prosecutor impliedly threatened him by opining about the likelihood of his success at trial.

Petitioner has not shown the state habeas courts' findings of fact were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Nor has petitioner shown the state habeas courts' conclusion of law as to the voluntariness of his plea was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Consequently, petitioner's claim should be denied for failing to meet the AEDPA burden of proof.

Further, there is no evidence in the record of this alleged conversation between the prosecutor and petitioner.  Petitioner has again made a bald assertion on a critical issue, unsupported by anything contained in the record.  Petitioner's conclusory allegation that the prosecutor threatened him is not entitled to evidentiary weight and is subject to summary dismissal.

Even if, for the sake of argument, the alleged conversation took place, the mere fact of such a conversation does not render petitioner's guilty pleas involuntary.  A prosecutor is entitled to make, and to carry out, threats to seek higher punishment if the accused refuses to

plead guilty.[9]  *Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978).  Here, the punishment

range for the offenses charged in these cases did, in fact, include the possibility of a life sentence

upon conviction.  Consequently, even if the prosecutor stated it was his intent to seek

punishment at trial higher than that offered in plea negotiations, such a statement was not

unconstitutionally coercive.  Moreover, a guilty plea is not "involuntary" solely because a

defendant pleads guilty out of a desire to limit the possible penalty.  *Brady*, 397 U.S. at 751.

Further, petitioner's guilty pleas would not have been rendered involuntary simply by the

prosecutor speculating as to the potential outcome of a jury trial.  Although petitioner is correct

in that the prosecutor  "could not possibly have known" what a jury would do if petitioner went

to trial, his contention that voicing such speculation to a defendant would constitute a threat

sufficient to render a guilty plea involuntary has no legal support whatsoever.  Petitioner has not

demonstrated coercion by the prosecutor because of any hypothecation regarding what a

potential jury would do.  Petitioner's claim should be denied for failure to meet the required

burden of pr0of, as conclusory and/or without merit.

### *1.c.  Judicial Coercion*

Petitioner also argues his plea was involuntary because it was the product of threats and

coercive tactics on the part of the trial judge.  Specifically, petitioner contends he had a

conversation with the trial judge, on the date of his plea hearing, during which the judge

discussed parole eligibility pursuant to a guilty plea on the charges <u>without</u> a deadly weapon

---

[9]Respondent argues the understanding between the parties that a prosecutor will seek a greater punishment if required to go to trial makes a potential guilty plea more knowing and voluntary, not less.  Respondent maintains petitioner's subjective fear of the risk of going to trial, combined with the knowledge that the prosecutor would seek a sentence at trial greater than that offered for a plea, resulted in petitioner's belief that he was "forced" to accept the guilty pleas.  Respondent contends the fear of going to trial and receiving a greater sentence is the driving force behind a plea, and is a necessary pressure component of plea negotiations.  Respondent's argument is persuasive.

finding versus a jury finding of guilt on the charges <u>with</u> a deadly weapon finding.  Petitioner

also contends the trial judge suggested to him that if petitioner went to trial, a jury would most

likely convict petitioner, make a deadly weapon finding, and sentence him harshly based on all

of the other charges against him.

At a pre-trial hearing, the trial judge thoroughly discussed correspondence he received

from petitioner requesting removal of his appointed counsel, the appointment of new counsel

meeting certain qualifications, and a transfer of venue.  The trial judge also discussed, in

hypothetical terms, how eligibility for parole is determined and the difference between

concurrent and consecutive sentence terms.  Toward the end of the hearing, an off-the-record

discussion was held.  At the guilty plea hearing which immediately followed, the trial court

referred to this discussion as an off-the-record, informal conversation between the parties,

defense counsel and petitioner.  However, there is absolutely no evidence the trial judge voiced

an opinion to petitioner that a jury would, in all likelihood, convict petitioner and assess a stiff,

aggravated punishment if petitioner chose not to enter a guilty plea.  Again, petitioner has made

a bald assertion on a critical issue, unsupported by anything in the record or corroborated by any

extrinsic evidence.  Petitioner presents nothing more than a conclusory allegation that the trial

court stated opinions concerning the outcome of a trial and that such statements were threatening

and coercive.  Without more, petitioner's allegation is not entitled to evidentiary weight and is

subject to summary dismissal.

The undersigned notes the trial judge in this case went far beyond what might ordinarily

be expected in attempting to ensure petitioner understood, *inter alia*, each and every aspect of

the proceedings against him, why the judge made the rulings he did, the qualifications of

criminal attorneys, consequences of petitioner's guilty plea, how petitioner's sentence would be calculated and what was required to obtain good time toward a sentence. Moreover, as demonstrated by the record, petitioner was an active participant in the on-the-record discussion, initiating much of the direction of the discussion.

Petitioner's allegations of coercion are conclusory and there has been no showing that petitioner's guilty plea was coerced. This claim should be denied. Moreover, petitioner has again not shown the state habeas courts' findings were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nor has petitioner shown the state habeas courts' conclusion of law as to the voluntariness of his plea was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.

### 1.d.  Failure to abide by the terms of the plea agreement

Petitioner also argues his plea was involuntary because the State failed to abide by the terms of the plea agreement that the State would drop one of the two counts of injury to a child alleged in Cause No. 4836 in exchange for petitioner's guilty plea. Petitioner's claim is without merit.

If a defendant's guilty plea rests to any significant degree on a promise made by the government, that promise must be fulfilled. *Pierce v. Scott*, 62 F.3d 394 at *2 (5th Cir. 1995). A plea agreement that was induced by unkept promises is involuntary and the conviction cannot stand. *Id.* "An unkept plea bargain is a basis for the grant of habeas relief if the petitioner can prove the existence of the allegedly broken plea." *Bonvillain v. Blackburn*, 780 F.2d at 1251. "To prove the existence of the plea bargain, the petitioner must prove:  '1) exactly what the terms

of the alleged promises were; 2) exactly when, where, and by whom such a promise was made; and 3) the precise identity of an eyewitness to the promise.'" *Id.*

In the Stipulation of Evidence entered in Cause No. 4836, petitioner judicially confessed to Count One of the indictment, modified by physically striking by hand the culpable mental state of "intentionally," resulting in a judicial confession that petitioner "knowingly" caused serious bodily injury to a child. The modification appears to be by agreement of the parties as indicated by their initials. In this Stipulation of Evidence, Count Two of the indictment, in its entirety, was physically struck through by hand, also pursuant to agreement of the parties as indicated by their initials. The State did not, however, file a superseding indictment dropping Count Two of the original indictment or any other written pleading dismissing Count Two or amending the original indictment. In the Judgment entered in Cause No. 4836, the caption states "(two counts)" and indicates petitioner entered a plea of guilty to the offense of "Injury to a child, as alleged in the charging instrument." Thus, even though the parties agreed to the striking of Count Two in its entirety in the amended Stipulation of Evidence, Count Two remained in the final judgment.[10]

Again, the burden is on petitioner to prove the existence of the allegedly broken plea. Here, petitioner has not met that burden. Petitioner has not pointed to, and the undersigned cannot find, anywhere in the record where dismissal of Count Two was part of the written plea agreement between the parties. After reviewing the precise terms of the plea agreement with petitioner – which did not include any mention of the dismissal of Count Two in Cause No. 4836 but did include a discussion as to the agreed dismissal of charges – the trial court asked

---

[10]An Offender Information Detail from TDCJ-CID's official website reflects two offenses in Cause No. 4836.

petitioner if there were any other terms of the plea agreement to which petitioner responded, "No, sir, Your Honor. That covers everything." This statement contradicts petitioner's allegation that the plea agreement, included dropping Count Two of the indictment in Cause No. 4836. Consequently any claim by petitioner that the prosecutor violated the terms of the plea agreement at most, ambiguous, and subject to dismissal. Petitioner's claim should be denied.

Moreover, the state habeas courts found petitioner's guilty plea was voluntary, necessarily finding the prosecution did not make a promise to petitioner that was not fulfilled, and/or that petitioner's guilty plea did not rest to any significant degree on such a promise. Petitioner has not shown the state habeas courts' findings of fact were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nor has petitioner shown the state habeas courts' conclusion of law as to the voluntariness of his plea was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Consequently, petitioner's claim should also be denied for failing to meet the AEDPA burden of proof.

### *4.a. Open Court*

In Cause No. 4836 (injury to a child), petitioner asserts his guilty plea was involuntary because the trial court failed to obtain petitioner's plea of guilty in "open court." At the plea hearing, the following exchange occurred:

| The Court: | Mr. Shields, I call on you at this time to enter your plea of guilty or not guilty; what is your plea? |
|---|---|
| Defendant: | I plea guilty, Your Honor. |
| The Court: | I've got some questions I want to ask you. I will take your plea under consideration. |

*Plea of Guilty*, at 6.  After further discussion between the state trial court and petitioner the following exchange took place:

> The Court:     Understanding that, do you still want to plea guilty in both cases?
>
> Defendant:     Yes, sir, Your Honor.

*Plea of Guilty*, at 13.  The trial court then found petitioner sane and competent, that his pleas were freely and voluntarily entered, and that he knowingly, intentionally and voluntarily waived his constitutional rights.  Subsequent to this exchange, petitioner testified on cross-examination as follows:

> Q:     [F]irst of all, Adam, did you intend to injure your child?
>
> A:     No.
>
> Q:     You acknowledge that you did injure your child; is that correct?
>
> A.     Yes.

*Plea of Guilty*, at 21.  Additional testimony was solicited from petitioner concerning his inability to recall the events that happened around the incident, his ability to know right from wrong, and the voluntary nature of his methamphetamine use.

By this ground, petitioner appears to argue his statement that he did not intend to injure his child negated his previous guilty pleas and, thus, no plea of guilty was obtained in open court.  Petitioner argues that at no time did he plead guilty to intentionally causing his child severe bodily injury and that, instead, if he pleaded guilty it was only to using intoxicating substances.  The record disputes petitioner's contention and reflects petitioner did, in fact, plead guilty, in open court, to the first degree felony offense of injury to a child (with severe bodily injury) as charged.  Petitioner also executed a written judicial confession in which he confirmed

he had read the indictment and committed the offenses described therein, and signed a "Stipulation of Evidence" in which he judicially confessed to specific facts to support his plea of guilty. Petitioner's argument is without merit and should be denied.

Moreover, to the extent he raised this ground and it was denied by the state courts, petitioner has not shown the state habeas courts' findings of fact were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nor has petitioner shown the state habeas courts' conclusion of law as to this issue was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Consequently, petitioner's claim should be denied for failing to meet the AEDPA burden of proof.

### *4.b. Intoxication Manslaughter*

Petitioner also argues his plea was improperly based on trial counsel's erroneous admission concerning "intoxication manslaughter." During the plea hearing, the court questioned petitioner as follows:

> The Court:    [I]n either one of these cases at the time the offenses were committed, that you were either incompetent or insane.
>
> Petitioner:    At the time that it happened?
>
> The Court:    Yes, sir.
>
> Petitioner:    Yes, I was.

Later in the plea hearing, the prosecutor questioned petitioner as follows:

> Q:    You had, prior to that, a history of methamphetamine abuse; is that correct?
>
> A.    Yes, sir.

Q.     You'd been under a great deal of stress at that time; is that correct?

A.     Yes.

Q.     Do you have a really present recollection at this time of all the events that happened around that incident? You don't know everything that happened, do you, Adam?

A.     No.

Q.     But you, at that period of time, had the ability to understand right from wrong, did you not?

A.     If I didn't know, it was my fault.

Q.     On this methamphetamine use, was methamphetamine ever forced upon you? Did the use begin voluntarily?

A.     No.

       . . .

A.     I guess more like peer pressure....

*Plea of Guilty*, at 21-22. At two points prior to the above exchange, the state trial court held "off the record discussions." If it is petitioner's argument that the parties discussed involuntary manslaughter during these discussions and analogized the circumstances to petitioner's situation thereby misleading petitioner, petitioner's argument is conclusory and not entitled to any evidentiary weight.

Further, the undersigned does not find any erroneous admission regarding "intoxication manslaughter" to justify petitioner's plea. Nor does the undersigned find an erroneous standard of "intoxication manslaughter" was used to find petitioner guilty of his offense. Petitioner's claims are without merit.

Moreover, to the extent petitioner raised this issue in state court proceedings, petitioner

has again not shown the state habeas courts' findings of fact were based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding.  Nor

has petitioner shown the state habeas courts' conclusion of law as to the voluntariness of his plea

was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States.  Consequently, petitioner's claim should

be denied for failing to meet the AEDPA burden of proof.

In conclusion, the undersigned again notes petitioner's claim that his guilty plea was

involuntary is contradicted by the Written Plea Admonishments contained in the record,

petitioner's testimony at the plea hearing, the trial court's finding that petitioner's plea was

freely and voluntarily made, as well as the state court findings on habeas review.  Petitioner has

not shown he did not understand the charge against him, the maximum punishment to which he

was exposed, or the consequences of his guilty plea.  Petitioner's claims are without merit and

should be denied.

## B.  Abuse of Discretion

In his second and fifth grounds, petitioner contends the trial court abused its discretion

when the trial judge:

1.      Involved himself in the plea discussions;

2.      Refused to grant a change of venue;

3.      Recommended "on the record" that petitioner accept the plea agreement; and

4.      Accepted petitioner's guilty plea in Cause No. 4836 even though the judge
        "was not convinced" petitioner was actually guilty as charged.

## 2.a. *Court Involvement in Plea Negotiations*

Petitioner argues the trial court abused its discretion by being directly involved in petitioner's plea negotiations with the prosecution. The record shows that at a pretrial hearing, the trial court did, in fact, discuss with petitioner and all counsel the difference between straight time and good time, the effect of an aggravated finding as opposed to a non aggravated finding, the nature of parole eligibility, the effect of good time on parole eligibility, and the effect of concurrent versus consecutive sentences. The record, however, does not demonstrate the trial court "became an active participant in the plea negotiations." Instead, it appears the trial court took great strides to ensure petitioner understood the consequences of a guilty plea, understood the effect of parole as well as how to accrue more good time toward parole. The trial court gave hypothetical examples of different types and lengths of sentences and in order to demonstrate how parole eligibility would be determined. The trial court repeatedly stated he did not want to know the specific terms or status of plea negotiations, that he was only providing guidance on parole eligibility to advise petitioner of the result of a guilty plea to ensure it was knowing and voluntary, and that a jury was, in fact, called for the next Tuesday for petitioner's trial. This limited discussion regarding the effect of a guilty plea to the charges, the possible sentencing and how they could be affected by the parole laws, did not operate to make the discussion coercive. Nor does the undersigned find the state trial court's statements indicated, one way or the other, whether the court believed petitioner should accept the plea bargain or proceed to trial. Instead, the trial court showed concern for petitioner and his full and complete understanding of the proceedings against him. Petitioner's claim of judicial abuse of discretion should be denied.

*2.b.  Denial of Change of Venue*

During the pretrial hearing, the state trial court judge advised petitioner he would take petitioner's motion for a change of venue "under consideration" until a venire was assembled for petitioner's trial the following Tuesday.  The judge explained, "If the jury says they can't be fair, we'll move venue."  By this ground, petitioner alleges the trial court abused its discretion by not granting petitioner a change of venue because he could not receive a fair trial locally because of the highly prejudicial pretrial publicity concerning his case.  Petitioner concludes the hostile and pervasive atmosphere put undue pressure on the prosecutor to convict petitioner and obtain a lengthy sentence for him.

Petitioner waived this claim when he pleaded guilty.  *See Baeza v. United States*, 543 F.2d 572, 573 (5th Cir. 1976).  Even if this Court considers petitioner's claim, petitioner's argument is without merit.  First, the state trial court did not deny petitioner's request for a change of venue.  Instead, he took it under advisement, reserving ruling until a jury panel was assembled for questioning concerning whether the effect of pre-trial publicity infected the impartiality of the potential jurors.  Second, petitioner's claims of prejudicial pre-trial publicity so infecting the community sentiment as to render the selection of a fair and impartial jury improbable is purely conclusory and without evidentiary support.  Petitioner has presented nothing, other than his own speculation, that a local impartial jury was improbable.  Without evidence to support his claim, this ground must be denied.

*2.c.  Recommendation to Accept*

During the plea hearing, the prosecution filed with the state trial court a document entitled "Punishment Recommendations" indicating it was "mutually agreed and recommended

to the Court" that petitioner be imprisoned for fifty years, that the sentences run concurrently, and other charges against petitioner be dismissed.   At the plea hearing, the state court judge stated:

> Mr. Shields, this is what it says it is [Punishment Recommendations].  It's a recommendation.  I'm not bound by it.  I will tell you this much.  I have lived with these cases a number of months.  I know it's been anguish to you and to the State's attorney and your attorney and a lot of other people.  I will tell you I'm going to follow the recommendation, because we have done a lot of talking about this.  I don't usually tell you up front I'm going to.  In fact, this may be the first time I've ever told an inmate I would follow the recommendation.  I usually want to take them under consideration and do a lot of question asking and make conclusions later.

*Plea of Guilty*, at 11-12.  In his ground of error, petitioner claims this statement by the state trial court was an attempt on the part of the court to coerce petitioner into accepting the plea agreement.  Petitioner misconstrues the trial court's remarks.

Again, it appears the state trial court, in an abundance of caution, tried to ensure petitioner was confident in his decision to enter a guilty plea and was not going to have any surprises if he did, in fact, plea guilty.  The trial court was simply advising petitioner that if he did accept the plea, the court would not, as it was entitled to do, reject the punishment recommendation of the state.  Petitioner's claim is without merit and does not support an award of habeas corpus relief.

### 2.d.  *Trial Court Believed Petitioner was Guilty*

By this ground, petitioner appears to argue a letter, purportedly authored by the state trial judge and sent to petitioner after his conviction, wherein the judge wrote, "I do believe you love your son and would wish no harm on him," was indicative that the trial judge believed petitioner was not guilty of the injury to a child offense.  Petitioner's argument is completely dfspeculative,

without any evidentiary support whatsoever, and should be denied.

## C.  Ineffective Assistance of Counsel

In order to obtain habeas corpus relief on the ground of ineffective assistance of counsel, a petitioner must demonstrate not only that his counsel's performance was deficient, but also that the deficient performance prejudiced his defense.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  To demonstrate deficiency, the petitioner must show counsel's actions "fell below an objective standard of reasonableness."  *Id*. at 668, 104 S.Ct. at 2064.  A strong presumption exists "that trial counsel rendered adequate assistance and that the challenged conduct was reasoned trial strategy."  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066).  To demonstrate prejudice, a petitioner must show that a "reasonable probability" exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  If a petitioner fails to show either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong.  *Id.* at 697, 104 S.Ct. at 2069.

In his state habeas application, petitioner alleged he was denied effective assistance of trial counsel because counsel:

1.    Gave erroneous and misleading information that induced petitioner to accept the plea; and

2.    Failed to provide "conflict free" counsel because trial counsel also represented co-defendant in the possession case, Eugene Davis.

The state habeas court, presided over by the same trial judge that heard petitioner's trial, did not order petitioner's trial counsel to submit an affidavit responding to the allegations but, as noted

above, entered the following conclusions of law:

1. Trial counsel was not deficient in his performance on behalf of petitioner;

2. Trial counsel believed and a jury found petitioner was competent at the time petitioner entered his guilty pleas;

3. Trial counsel did not represent any individual who testified against petitioner at the same time as trial counsel was representing petitioner; and

4. Petitioner was properly admonished as to the consequences of his guilty pleas, petitioner's guilty pleas were voluntary, and petitioner knowingly, intelligently and voluntarily executed written waivers and acknowledgments as to same.

The Texas Court of Criminal Appeals denied petitioner's state habeas application on June 6, 2007 without written order on the findings of the trial court without a hearing.

### 3.a. *Erroneous and Misleading Advice*

In this federal habeas application, petitioner argues he was constitutionally denied effective assistance of counsel because counsel gave erroneous and misleading information that induced petitioner's pleas. Petitioner argues counsel misrepresented the terms of the plea bargain to petitioner and improperly advised petitioner of his professional opinion as to the potential findings of a jury after a trial. Petitioner does not specify which terms of the plea bargain counsel misrepresented or how this alleged misrepresentation prejudiced petitioner. Petitioner's claim is conclusory and is not entitled to evidentiary weight.

Petitioner also argues counsel improperly speculated a jury would not find petitioner insane at a trial, and would likely find petitioner guilty of the possession offense because petitioner was in the same room as the drugs. Again, this claim is entirely conclusory. However, even if this claim were true, petitioner has failed to provide any evidence or argument

demonstrating such advice would be outside the range of reasonable competence. This claim should be denied.

Moreover, petitioner has not shown the state habeas courts' findings of fact were based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Nor has petitioner shown the state habeas courts' conclusion of law as to the voluntariness of his plea was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Consequently, petitioner's claim should be denied for failing to meet the AEDPA burden of proof.

### 3.b. *Conflict of Interest*

Petitioner also asserts trial counsel was deficient for failing to provide "conflict free" counsel. As the bases for this claim, petitioner presents a narrative totally outside the record, to wit: Eugene Davis was arrested with petitioner and named as a co-defendant in Cause No. 4813, the possession case; petitioner's defense counsel was also appointed by the state trial court to represent Davis; Davis implicated petitioner in the drug possession case; trial counsel negotiated a plea arrangement for Davis pursuant to which Davis agreed to testify against petitioner; the terms of the plea agreement were very favorable to Davis despite his criminal history and, therefore, defense counsel must have shifted culpability for the drug case to petitioner. Petitioner appears to conclude a conflict of interest was present because co-defendant Davis, despite his criminal history, received a more lenient plea agreement than petitioner on the possession case, and could have only received a more lenient offer at petitioner's expense.

The record does not contain any support whatsoever for these allegations. Petitioner's allegations are conclusory and not entitled to any evidentiary weight.

Even if, for the sake of argument, petitioner's allegations were supported, petitioner has not conclusively shown counsel labored under an actual conflict, how counsel's representation of a co-defendant negatively affected counsel's representation of petitioner, how this dual representation rendered counsel's representation of petitioner deficient, or how the absence of this deficiency would have likely changed the outcome of petitioner's case. Petitioner's claim is conclusory and should be denied.

In addition, the Court of Criminal Appeals, based on the findings of the state trial judge that heard petitioner's trial, determined trial counsel was not deficient and that petitioner was not denied his constitutional right to effective assistance of counsel. This state court finding is entitled to a presumption of correctness and petitioner has failed to show the state court finding was unreasonable. Petitioner has not met his burden of showing this finding to be unreasonable. Petitioner's ground should be denied.

### 7.a.b.& c. *Amended Petition*

In his amended application, petitioner argues he was denied effective assistance of trial counsel because counsel failed to :

      a.      obtain an investigator to discover mitigating facts;

      b.      obtain an independent psychologist to litigate insanity; and

      c.      did not adequately prepare for trial.

Petitioner does not allege, much less prove what mitigating facts an investigator would have discovered that were not already known to petitioner and his counsel. Nor has petitioner shown a psychologist, employed by defense counsel rather than by the state court, would have determined petitioner was insane at the time of the offenses or was incompetent to stand trial.

Simply put, petitioner has not demonstrated he was prejudiced by these alleged "deficiencies" of defense counsel.

As argument for his claim that defense counsel did not adequately prepare for trial, petitioner argues counsel failed to:

> spend enough time with [petitioner] discussing matters, information learned from discovery, developments through letters from Petitioner and his family to the Trial Officials, the overall trial strategy and tactics and defense theory, and the advantages and disadvantages of admitting to Possession and Injury to a Child.

Petitioner further alleges defense counsel:

> did not interview numerous witnesses available to testify regarding [petitioner's] delusional mental state. . . . [and] did not seek or obtain medical and academic records which detailed his troubled childhood and youth, delusional thinking, and suicide attempts.

Petitioner concludes his previous psychological treatment was thus not considered and counsel did not have accurate information to assess whether petitioner was competent to stand trial, or whether a defense of insanity or diminished capacity was appropriate.

Petitioner's allegations are entirely conclusory and entitled to no evidentiary weight. Petitioner globally asserts counsel failed to spend enough time with petitioner discussing various aspects of his case, but fails to specify how each alleged act was deficient or "fell below an objective standard of reasonableness" or how the alleged act prejudiced petitioner by showing the result in these cases would have been different.

Further, petitioner fails to identify the "numerous witnesses available to testify" regarding his delusional mental state who he contends defense counsel should have called. Complaints of uncalled witnesses are not favored in federal habeas review because allegations of what a witness would have testified are largely speculative. *Marler v. Blackburn*, 777 F.2d

1007, 1010 (5th Cir. 1985) (citing *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984)); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  In order to prevail on an uncalled witness claim, a petitioner must satisfy the court concerning the substance of the uncalled witnesses' testimony.  *See Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986), *cert. denied*, 479 U.S. 1030, 107 S.Ct. 873, 93 L.Ed.2d 827 (1987)  A petitioner must also prove the uncalled witness would have appeared at trial, and would have testified favorably.  *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).

Again, petitioner's argument that counsel did not seek or obtain medical and academic records which detailed petitioner's troubled childhood and youth, delusional thinking, and suicide attempts, is entirely conclusory.  The Court has no evidence before it reflecting what medical records defense counsel did or did not seek.[11]  Defense counsel did, however, request a competency examination and a competency hearing on petitioner's behalf indicating his belief that a competency defense could be viable.  Petitioner has not shown counsel's representation was deficient or how additional actions on counsel's part would have altered the outcome of petitioner's competency examination or of his cases.  Petitioner has not demonstrated he is entitled to federal habeas corpus relief.  Petitioner's grounds are without merit and should be DENIED.

## D.  Sufficiency of the Evidence

In his sixth ground, petitioner appears to argue to argue his conviction is invalid because

---

[11]While it does appear the psychologist who examined petitioner did not have all of the records from petitioner's previous psychological treatment, it appears the psychologist did consider petitioner's reported treatment at these facilities in making his determination on competency to stand trial.

the prosecution did not present sufficient evidence corroborating his guilt during the guilty plea proceedings as required by Texas law.  *See* Tex. Code Crim. Proc. Ann. Art. 1.15 (Vernon 2005).  Specifically, petitioner contends the prosecution failed to prove the culpable mental state of intentionally or knowingly committing the offense of injury to a child.  Petitioner maintains a letter to petitioner from the trial judge after his conviction wherein the judge stated, "I do believe you love your son and would wish no harm on him," is evidence the prosecution did not prove the mental culpability element of the offense but, instead, proved only that petitioner recklessly or criminally negligently committed the act – evidence insufficient to support his guilty plea and conviction.

A failure to comply with state law requirements presents a federal habeas issue only if it involved federal constitutional issues.  *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986).  State courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice that such an inquiry is needed.  *Id.*  It is the rule in the Fifth Circuit that "[n]o federal constitutional issue is raised by the failure of the Texas state court to require evidence of guilt corroborating a voluntary plea," and the *Jackson v. Virginia*, 443 U.S. 307 (1979) sufficiency of the evidence standard is not applicable to convictions based on a guilty plea.  *Id.*  Consequently, petitioner's claim is not a proper one for federal habeas review.

Even so, the undersigned notes there was sufficient evidence to support petitioner's guilty plea to the offense of injury of a child.  When petitioner entered his guilty plea, he stipulated that he did "knowingly cause serious bodily injury to Xavier Shields, a child 14 years of age or younger, by shaking Xavier Shields."  Petitioner stipulated to evidence legally

sufficient to support his conviction under state law. The post-conviction letter from the state trial judge, while acknowledging petitioner surely did not "wish" to cause his infant son harm, is not newly discovered evidence proving the required culpable mental state of "knowing" was not proven, nor is it proof of a lack of sufficient evidence to support petitioner's guilty plea. This claim should be denied.

### E. Actual Innocence

In his amended petition, petitioner argues he is actually innocent of the charged offenses as shown by newly discovered evidence, to-wit: evidence that the trial court judge was subsequently indicted.

"[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). Consequently, the United States Supreme Court has yet to recognize a freestanding claim of actual innocence. *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010).

Here, petitioner asserts a claim of actual innocence as an independent claim for federal habeas corpus relief rather than as a basis by which to overcome a procedural bar to review of a claim. Petitioner's actual innocence claim appears to be based on "newly discovered evidence" which developed subsequent to petitioner's conviction and which had no bearing on petitioner's guilt of the charged offenses. Moreover, petitioner has not identified an independent constitutional violation occurring in his underlying state criminal proceeding which can be established by his actual innocence claim based on newly discovered evidence. Petitioner's

claim is not cognizable on federal habeas review and should be denied.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for Writ of Habeas Corpus by a Person in State Custody filed by petitioner ADAM RYAN SHIELDS be DENIED.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of September, 2010.

_CLINTON E. AVERITTE_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to

timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).